UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

JESSE L. BRINKLEY                                                                              PLAINTIFF

VERSUS                                                        CIVIL ACTION NO. 2:05cv371KS-MTP

UNITED STATES OF AMERICA;
ANGELA WILLIAMS, M.D.; and
JOHN AND JANE DOES 1-15                                                              DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the court on Motion for Summary Judgment **[#57]** filed on behalf of Defendant Angela Williams, M.D. ("Williams") and on Motion to Dismiss or for Summary Judgment filed on behalf of the United States of America ("the United States") **[#60]**.[1] The court, having reviewed the motions, the responses, the briefs of counsel, the pleadings and exhibits on file and being fully advised in the premises finds that Williams' motion should be Denied and that the Unites States' motion should be Granted in part and Denied in part. The court specifically finds as follows:

**FACTUAL BACKGROUND**

On June 6 2003, the plaintiff, Jesse L. Brinkley ("Brinkley") was admitted to the Veterans Administration Hospital, Gulfport Division of the Gulf Coast Veterans Health

---

[1] On June 13, 2006, the court granted summary judgment in favor of Williams' employer, LocumTenens.com, LLC.

Care System for a court ordered mental evaluation "in order to assist the Court in finding out whether the defendant presents a danger to any other person or the community," pursuant to his arraignment on criminal charges before United States Magistrate Judge Louis Guirola, Jr.  Dr. Miles A. Erickson with the Gulfport VA facility examined Brinkley on or about June 9, 2003, and issued his report pursuant to the court order finding that Brinkley was competent.

On the morning of June 11, 2003, Brinkley was transported, in full body restraints, to a court appearance again before Judge Guirola.  After a hearing and an examination of Dr. Erickson's report, Judge Guirola executed an Order of Release and an Appearance Bond.  These documents were given to Brinkley who took them and returned to his Gulfport facility unit, with no body restraints, at approximately 11:15 A.M.

Upon his return, Brinkley informed the VA personnel that he had been released and gave them the Order from Judge Guirola and the Appearance Bond.  He also called his wife to drive from Hattiesburg to pick him up and informed the VA personnel he had done so.  Williams was consulted about the release because she was on call for Dr. Erickson, who was away.  Williams argues that she was not certain that the proper examination of Brinkley had been conducted and was thus reluctant to authorize Brinkley's release.  However, it appears from the evidence submitted that Williams was well aware that Erickson had completed the court-ordered examination, she just questioned his conclusions and methodology in arriving at those conclusions.  Thus, she ordered Brinkly to be detained until she could do an investigation of sorts.  At this point, Brinkley apparently became agitated and upset.  In an effort to ameliorate the situation, Williams instructed VA staff to escort Brinkley to lunch at approximately 12:20

P.M.  Brinkley agreed and went to lunch.

At approximately 1:10 P.M., Brinkley returned from lunch to Building 62-G2 to await arrival of his wife.  Unbeknownst to Brinkley, his wife had arrived while he was at lunch and was told that Brinkley could not be released at that time.  She returned home without Brinkley.  Shortly after his return, Williams again told Brinkley that he was not going home, at which point Brinkley again became extremely agitated.

Thereafter, Brinkley had further discussions with Williams and Gus Rivers, a social worker.  At approximately 1:45 PM, two and a half (2 ½) hours after he returned to 62-G2 with the Order of Release, Williams apparently decided that Brinkley was a danger and ordered VA personnel to put Brinkley in four point restraints, to which Brinkley did not object and cooperated with.

In the process of being put into the restraints ordered by Williams, Brinkley allegedly suffered a fractured right pinky finger and a severe and permanent injury to his thyroid cartilage.  Approximately one hour later, some three and a half (3 ½) hours after his original return to building 62-G2 from Court, the Administrative Officer of the facility, Nolan Duhe, ordered the restraints removed from Brinkley.  Shortly thereafter, a VA employee called a taxi which took Brinkley to his home in Hattiesburg.  Brinkley allegedly sought and, according to him,  was later treated for the injuries to his hand and neck.

Brinkley filed an administrative complaint with the VA regarding his injuries after which the VA convened a Board of Investigation and took sworn testimony from numerous VA personnel as well as Brinkley.  After the investigation and hearings were concluded, Chief of Psychiatry, Gregory Gillette, MD; Director, Julie A. Catellier; and,

Chief of Staff, Gregg S. Parker, MD rendered their findings, opinions and recommendations which concluded that Brinkley had been subjected to unwarranted patient abuse directly as a result of Dr. Erickson's poor documentation and negligence in assessing Brinkley's competency.

## **STANDARD OF REVIEW**

The United States has moved for dismissal under Rule 12(b) for lack of subject matter jurisdiction or in the alternative for summary judgment.  A Rule 12(b)(1) motion attacks the court's jurisdiction to hear and to decide any issues in the case and therefore the court must address this issue at any time during the pendency of the litigation that it is asserted or even indeed upon its own motion.  *See Williamson v. Tucker*, 645 F. 2d 404 (5th Cir. 1981).  Therefore, any motion which challenges the subject matter jurisdiction of the court would be proper at any time, even up until trial. Rule 12(h)(3), Fed.R.Civ.P.

It is settled that on a 12(b)(1) motion the court may go outside the pleadings and consider additional facts, whether contested or not and may even resolve issues of contested facts.   This is not like the situation where a 12(b)(6) motion must be converted to one for summary judgment if matters outside the pleadings are examined as asserted by the plaintiff.  However, since the United States has moved alternatively for summary judgment and the parties have briefed it as such, the court will review the motions under the well-settled analysis called for by Rule 56.

The Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment

where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986).  The existence of a material question of fact is itself a question of law that the district court is bound to consider before granting summary judgment.  *John v. State of La. (Bd. of T. for State C. & U.)*, 757 F.2d 698, 712 (5th Cir. 1985).

    A Judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.  There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986).

    Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role.  *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir. 1986).  "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment.  The dispute must be genuine, and the facts must be material."  Id.  "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment."  *Phillips Oil Company v. OKC Corporation*, 812 F.2d 265, 272 (5th Cir. 1987).  Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of

law, . . . all other contested issues of fact are rendered immaterial. *See Celotex*, 477 U.S. at 323, 106 S.Ct at 2552." *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992).

In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light most favorable to the non-moving party. *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion. *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982). The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues. *Topalian*, 954 F.2d at 1131.

"Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]." *John*, 757 F.2d at 708. "Summary judgment cannot be supported solely on the ground that [plaintiff] failed to respond to defendants' motion for summary judgment," even in light of a Local Rule of the court mandating such for failure to respond to an opposed motion. *Id.* at 709.

However, once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence. *Ferguson v. National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978). In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence'

demonstrating the existence of a triable issue of fact." *In Re Municipal Bond Reporting Antitrust Lit.*, 672 F.2d 436, 440 (5th Cir. 1982).  To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial.  Rule 56(e), Fed.R.Civ.P.  *See also, Union Planters Nat. Leasing v. Woods*, 687 F.2d at 119.

While generally "'[t]he burden to discover a genuine issue of fact is not on [the] court,' (*Topalian* 954 F.2d at 1137), 'Rule 56 does not distinguish between documents merely filed and those singled out by counsel for special attention-the court must consider both before granting a summary judgment.'" *John*, 757 F.2d at 712 (quoting *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir. 1980)).

## Motion of the United States

The Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671-2680, is a limited waiver of sovereign immunity.  It makes the federal government liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment.  *United States v. Orleans*, 425 U.S. 807, 813 (1976).  In order to recover under the FTCA a plaintiff must establish that his injury is the result of a negligent or wrongful act or omission of a federal employee acting within the scope of his employment*.  Laird v. Nelms*, 406 U.S. 797, 799 (1972).

The United States first contends that the plaintiff has not and cannot establish

liability on the part of the United States for any such negligent or wrongful act or omission by defendant Williams in that the court has already ruled that she is not an employee of the United States but an independent contractor employed by former defendant LocumTenens.  The plaintiff concedes as much, as well he should.  Instead, the plaintiff contends that he is asserting liability on the part of the United States for acts of negligence or omissions by VA employees in retaining and/or improperly restraining Brinkley and that his claims against Williams are separate and apart from the alleged negligent acts of the VA employees and the failure of the United States to have proper practices and procedures in place to deal with this situation.

In response to this assertion, the United States argues that the claims asserted by the plaintiff against actual VA employees are intentional acts equivalent to an assault, battery and false imprisonment.  The United States is correct in pointing out that such intentional acts are excepted from the FTCA pursuant to 28 U.S.C. § 2680(h).

However, after a thorough review of the pleadings and submissions, the court is convinced that the plaintiff has properly alleged negligent acts or omissions by employees of the United States in the chain of events leading to the treatment of the plaintiff and the filing of this action.  Whether or not the plaintiff can prove those allegations is a matter of proof.  At this point, he has identified a genuine issue of fact for trial based on potential negligent acts or omissions on the part of employees of the United States.  However, to the extent that the ultimate proof at the trial of this matter leads the court to conclude that any of the alleged negligent acts amount to intentional misdeeds, they will be dismissed.

**Motion of Dr. Williams**

Dr. Williams has moved for summary judgment on three grounds: 1) that the plaintiff has failed to articulate any standard of care she violated; 2) that she is entitled to statutory immunity; and 3) that she is entitled to quasi-judicial immunity.  Her first argument is that the plaintiff has presented no expert testimony specifically stating that she violated the appropriate standard of care because none of the plaintiff's experts have articulated what the standard of care is.

The plaintiff's experts are three VA employees including the then director of the Gulf Coast VA, Chief of the psychiatric unit and the Chief of Staff for the facility.  All three of these were involved in the investigation of this incident and responsible for reaching conclusions about the treatment of Brinkley and for formulating and implementing appropriate disciplinary actions for the ultimate shortcomings found. They are imminently qualified to testify about the standard of care and whether Williams breached such a standard. After a careful review of all of the submissions, the finds that the plaintiff has created a genuine issue of fact as to whether Dr. Williams was negligent and whether she breached the appropriate standard of care by her actions on June 11, 2003.

Dr. Williams finally asserts that she is statutorily and/or quasi-judicially immune from liability.  Williams has invoked Miss. Code Ann. § 41-21-67(5) which provides:

> (5) Whenever a licensed physician or psychologist certified to complete examinations for the purpose of commitment has reason to believe that a person poses an immediate substantial likelihood of physical harm to himself or others or is gravely disabled and unable to care for himself by virtue of mental illness, as defined in Section 41-21-61(e), then the physician or psychologist may hold the person or the physician may admit the person to and treat the person in a licensed medical facility, without a civil order or warrant for a period not to

9

exceed seventy-two (72) hours or the end of the next business day of the chancery clerk's office. Such person may be held and treated as an emergency patient at any licensed medical facility, available regional mental health facility, or crisis intervention center. The physician or psychologist who holds the person shall certify in writing the reasons for the need for holding. Any respondent so held may be given such treatment by a licensed physician as indicated by standard medical practice. Persons acting in good faith in connection with the detention of a person believed to be mentally ill shall incur no liability, civil or criminal, for such acts.

The court finds, at this point, that Dr. Williams' assertion of immunity is without merit.  She was in clear violation of a federal court order directing that Brinkley be released when she refused to let him go.  This plainly obviates any claim to quasi-judicial immunity and calls into question her good faith actions in qualifying for statutory immunity.  This is so because there appears to be a conflict in the evidence as to whether Williams didn't fully appreciate the release order or whether she merely disagreed with Dr. Erickson's finding of competency relied upon by the court in ordering Brinkley's release.  That conflict can only be resolved by the trier of fact.

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion for Summary Judgment **[#57]** filed on behalf of Defendant Angela Williams, M.D. is Denied and that the Motion to Dismiss or for Summary Judgment filed on behalf of the United States of America **[#60]** is Granted to the extent that the plaintiff alleges any liability on the part of the United States attributable to the alleged negligent acts or omissions of Dr. Williams but is Denied in all other respects.

SO ORDERED AND ADJUDGED this the 11th day of January, 2007.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE